IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LIBERTY BANKERS LIFE § <br> INSURANCE COMPANY, *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> WALTER H. LENHARD, III, § <br> § <br> Defendant. § | Civil Action No. 3:16-CV-02417-N |

# ORDER

This Order addresses Defendant Walter H. Lenhard, III's motion to dismiss for lack of personal jurisdiction and failure to plead fraud with particularity [3]. For the reasons set forth below, the Court holds it has personal jurisdiction over Lenhard, but dismisses the fraud claim.

## I. ORIGINS OF THE DISPUTE

This case arises from Plaintiff Liberty Bankers Life Insurance Company's ("Liberty") purchase of Lenhard's controlling interest in Plaintiff Continental Life Insurance Company ("Continental") and other companies through a stock purchase agreement (the "SPA"). Lenhard resides outside of Texas.[1] Liberty is an Oklahoma insurance company

---

[1] Plaintiffs contend that Lenhard resides in Pennsylvania, while Lenhard asserts that he resides in Florida. Given that Lenhard owns a home in Florida at which he permanently resides, files taxes as a Florida resident, has been registered to vote in Florida since 2001, and has possessed a Florida driver's license since 2001, the Court assumes for purposes of this motion that Lenhard is a Florida resident.

ORDER – PAGE 1

headquartered in Dallas, Texas. Continental is a Pennsylvania insurance company that is also headquartered in Dallas.

While Lenhard owned Continental, he was responsible for establishing the company's proprietary accounting and financial systems and extracting data and reports for Liberty's due diligence processes. Thus, in the course of negotiating the SPA, Lenhard provided Liberty with background information and due diligence materials, including financial statements, from Continental. The parties also discussed the transaction at in-person meetings in Pennsylvania, New Jersey, and Texas. Lenhard transmitted a significant amount of transaction-related communications and information to Dallas via telephone, mail, and email throughout the negotiations.

The first substantive negotiations occurred at a July 2014 meeting between Liberty and Lenhard at Liberty's Dallas headquarters. Over the course of several hours, Lenhard discussed Continental's business operations and other due diligence information with Liberty's representatives. Lenhard also represented during the meeting that Continental's financial statements were true and accurate. After the meeting, Lenhard sent two boxes of due diligence materials to Liberty in Dallas.

In April 2015, Liberty and Lenhard closed on the SPA. As part of the closing, Lenhard set Liberty a letter agreeing to a post-closing price adjustment based on variances in Continental's post-closing financial statements. Lenhard also entered into a consulting agreement (the "Consulting Agreement") with Continental, under which Lenhard would perform services for Continental at a mutually agreed place. Because Lenhard was the only

person who understood or could extract information from the proprietary database he created at Continental, Liberty needed his services to transition Continental to new management and ensure that its financial information was accurate. Thus, from January to March of 2016, Lenhard assisted Continental in completing year-end financial reporting for the 2015 fiscal year. During that time, Lenhard sent numerous emails to Liberty's representatives in Dallas.

In the process of converting and migrating Continental's data to Texas, Liberty uncovered large discrepancies between its current numbers and the numbers Lenhard had previously provided. Specifically, Liberty discovered that Continental's statutory reserves, amounts Continental was legally required to maintain to cover future claims, were overstated.

Liberty's representatives in Dallas communicated by email and telephone with Lenhard, who was then located in Florida, about the reserves issues. In those conversations, Lenhard provided information about the year-end 2015 reserves and how he calculated them. Liberty thereafter asked Lenhard to run a report on statutory reserves from the database. Lenhard refused. He later stopped working with Continental's representatives in Texas on the reserves issues.

Liberty eventually caused Continental to restate its financial statements as a result of the discrepancies between the company's stated and actual reserves. Liberty also infused $1.8 million into Continental to avoid statutory insolvency. On March 7, 2016, Liberty demanded indemnification from Lenhard for Continental's inadequate reserves. It caused Continental to terminate the Consulting Agreement on the same day.

On May 3, 2016, Plaintiffs filed suit against Lenhard in Dallas County Court, asserting claims for fraud and misrepresentation (Count I), negligent misrepresentation (Count II), breach of the SPA (Count III), and breach of the Consulting Agreement (Count IV). Lenhard subsequently removed the case to this Court.

On August 26, 2016, Lenhard moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, to dismiss Count I of Plaintiffs' petition for failure to satisfy Federal Rule of Civil Procedure 9(b) [3]. On December 1, 2016, the Court granted Plaintiffs' request to conduct jurisdictional discovery with regard to specific personal jurisdiction. The parties have now completed supplemental briefing on Lenhard's motion to dismiss.

## II. THE SPECIFIC PERSONAL JURISDICTION STANDARD

A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). The Texas long-arm statute confers jurisdiction to the limits of the United States Constitution. *See id.*; *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process." *Religious Tech. Ctr. v.*

*Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex. App. – Tyler 2001, no pet.).

There are two types of personal jurisdiction: specific personal jurisdiction and general personal jurisdiction. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). At issue here is specific personal jurisdiction. In the Fifth Circuit, "specific jurisdiction is a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006)).

Courts in the Fifth Circuit employ a three-step test in analyzing specific jurisdiction, requiring: "(1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 540 (5th Cir. 2014) (internal quotation marks omitted). The "touchstone" of the first prong's minimum contacts analysis is whether the defendant's conduct shows that she "reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759 (internal quotation marks omitted). While specific jurisdiction is possible even if the defendant's forum contacts "are only isolated or sporadic," the relevant contacts "must be more than random, fortuitous, or attenuated." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498–99 (5th Cir. 2012) (internal quotation marks omitted). "[W]hether the minimum contacts are sufficient to justify subjection of the non-

resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

The second prong of the specific jurisdiction test is a flexible standard that aims to ensure a "causal nexus between the [alleged] conduct and the purposeful contact" and account for "the foreseeability and fundamental fairness principles . . . upon which the specific jurisdiction doctrine rests." *Chinese-Manufactured Drywall*, 753 F.3d at 543.

If plaintiffs satisfy their burden on the first two prongs, the burden shifts to defendants to show jurisdiction would be unfair, considering: (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interstate judicial system's interest in efficiently administering justice, and (5) the states' shared interest in furthering fundamental social policies. *McFadin*, 587 F.3d at 759.

Plaintiffs bear the burden of establishing the Court's jurisdiction over a foreign defendant. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). Proof by preponderance of the evidence is not required. *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

A court must accept uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts favor of the plaintiff. *Pervasive Software*, 688 F.3d 214 at 220.

In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (citations omitted).

### III. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION TO DISMISS

Lenhard now moves to dismiss Plaintiffs' complaint for lack of personal jurisdiction or, in the alternative, to dismiss Count I of Plaintiffs' complaint for failure to plead fraud with particularity.[2] The Court holds it has jurisdiction over Lenhard, but dismisses Count I.

#### *A. The Court Has Specific Personal Jurisdiction over Lenhard*

The Court has specific personal jurisdiction over Lenhard if: (1) Lenhard has minimum contacts "purposefully directed" at Texas, (2) there is a nexus between Lenhard's contacts and Plaintiffs' claims, and (3) the exercise of jurisdiction over Lenhard is "fair and reasonable." *See Chinese-Manufactured Drywall*, 753 F.3d at 540. All three requirements are satisfied here.

---

[2] Lenhard also argues for the first time in his supplemental reply that Pennsylvania law bars Plaintiffs' tort claims. The Court will not consider arguments raised for the first time in a reply. *See Inclusive Cmties. Project, Inc. v. U.S. Dept. of Treasury*, 3:14-CV-3013-D, 2015 WL 4629635, at *4 (N.D. Tex. Aug. 4, 2015).

***1. Lenhard has sufficient minimum contacts with Texas to justify the exercise of personal jurisdiction.*** – The Court first examines whether Lenhard has sufficient minimum contacts with Texas to justify the exercise of personal jurisdiction. *See id*. The "touchstone" of this analysis is whether Lenhard's conduct shows that he "reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759 (internal quotation marks omitted). The Court holds that Lenhard has such contacts with Texas.

Most importantly, Lenhard met with Liberty representatives and allegedly made representations regarding Continental's financial statements at Liberty's headquarters in Dallas in July 2014. The parties dispute the nature of the meeting. Lenhard contends that it was a general discussion of the company's operations, while Liberty claims that the meeting involved more detailed discussions of Continental's business. But the Court must resolve all factual conflicts in Plaintiffs' favor. *See Pervasive Software*, 688 F.3d 214 at 220. And Lenhard's claim that he met with Liberty in Dallas only because he was already there for flight training is to no avail. Plaintiffs have sufficiently alleged that Lenhard engaged in substantive discussions in Dallas in which Lenhard misrepresented Continental's financial health and that the discussions eventually led the parties to execute the SPA and Consulting Agreement.

Lenhard also sent two boxes of due diligence materials to Liberty in Dallas after the meeting in response to Liberty's request for more information. He made representations to Liberty in Dallas about Continental's financial health via email, telephone, and regular mail

throughout the course of the negotiations. He transmitted a written letter to Liberty in Texas to induce Liberty to proceed with closing the agreements.

Lenhard's reliance on *McFadin* is misplaced. In *McFadin*, the Fifth Circuit held that the district court lacked personal jurisdiction over a defendant sales representative who never traveled to Texas or accepted orders in Texas, and whose operations explicitly focused on and were centered in Colorado. 587 F.3d at 757, 760. The defendant's sole contacts with Texas arose from the facts that (1) she communicated with and received payments from the plaintiffs and (2) she received orders totaling less than four percent of her sales from Texas-based retailers in Colorado. *Id*. In contrast, Lenhard actually traveled to Dallas and met with Liberty there. *McFadin* is thus inapposite.

Instead, this case is more similar to *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003). In *Central Freight Lines*, the Fifth Circuit held that the district court had personal jurisdiction over a New Jersey defendant with respect to the plaintiff's tort and breach of contract claims where, among other things, the defendant company sent two representatives to the plaintiff's headquarters for a meeting at which the parties exchanged company information, and which eventually led the parties to negotiate and execute the contract at issue. *Id*. at 382. The Fifth Circuit noted that, where all of the parties' formal negotiations took place via telephone and written correspondence between their respective headquarters in Texas and New Jersey, the defendant could "not really dispute the fact that, during the course of negotiations, [it] specifically and deliberately 'reached out' to a Texas corporation by telephone and mail with the deliberate aim of entering into a long-standing

contractual relationship with a Texas corporation." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–79 (1985)). The Court further noted that, by entering into the contract at issue, the defendant "knew that it was affiliating itself with an enterprise based primarily in Texas." *Cent. Freight Lines Inc.*, 322 F.3d at 382.

Here, Lenhard met with Liberty's representatives in Texas to discuss information that eventually led the parties to execute the agreements at issue. He also communicated with Liberty via telephone, mail, and email regarding the transaction over an extended period of time. And while Lenhard contracted under the Consulting Agreement to provide Continental with services at mutually agreeable places, the parties specifically contemplated that the benefit of the services would be realized in Dallas. Lenhard's contacts with Texas were thus not "random, fortuitous, or attenuated." *See Constenla*, 669 F.3d at 498–99. Plaintiffs have sufficiently alleged that Lenhard has the requisite minimum contacts with Texas to support the exercise of personal jurisdiction.

***2. A Nexus Exists Between Lenhard's Contacts and Plaintiffs' Claims.*** – Plaintiffs' claims arise from Lenhard's alleged misrepresentations in connection with the SPA and Consulting Agreement. These misrepresentations include Lenhard's statements in the Dallas meeting with Liberty and his mail, telephone, and email communications with Liberty in Texas. A nexus thus unquestionably exists between Lenhard's Texas contacts and Plaintiffs' claims.

***3. The Exercise of Personal Jurisdiction is Fair and Reasonable.*** – Because Plaintiffs have established that Lenhard has the requisite minimum contacts with Texas, the

burden of proof shifts to Lenhard to show that the assertion of jurisdiction would be unfair and unreasonable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). In cases such as this, "rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 388 (5th Cir. 2015) (internal quotation marks omitted). Lenhard must therefore make a "compelling case." *Burger King*, 471 U.S. at 477. He has failed to do so here.

Lenhard offers no compelling reason why the burden of litigating in Texas would be unfair or unreasonable, especially given that he apparently travels biannually to Texas for flight training. And, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *McFadin*, 587 F.3d at 764 (internal quotation marks omitted). Texas has an interest in protecting its domiciliaries from being defrauded and providing relief for domiciliaries that suffer such injuries. Plaintiffs have an interest in obtaining convenient and effective relief in the state where they suffered the alleged damages. The interstate judicial system's interest in efficiency and the states' shared interest in furthering fundamental social policies neither support nor undercut the Court's exercise of jurisdiction here. The Court thus holds that its exercise of personal jurisdiction over Lenhard is consistent with traditional notions of fair play and substantial justice.

### *B. The Court Grants the Motion to Dismiss Plaintiffs' Fraud Claim*

Lenhard also moves to dismiss Plaintiffs' fraud and misrepresentation claim (Count I) for failure to plead fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b). The Court grants Lenhard's motion.

Under Rule 9(b), a plaintiff alleging fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178, 180 (5th Cir. 1997) (holding that plaintiffs failed to plead fraud with particularity where they did not clearly identify specific false statements in different documents). The Fifth Circuit applies "Rule 9(b) to fraud complaints with bite and without apology." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185–86 (5th Cir. 2009) (internal quotation marks omitted).

Here, Plaintiffs claim that Lenhard generally misrepresented Continental's statutory reserves in the course of negotiating the SPA. *See* Pet. ¶¶ 6.02, 6.03 (alleging that Lenhard "made material misrepresentations to" and "concealed from or failed to disclose certain material facts to" Plaintiffs) [1-1]. But Plaintiffs do not specifically identify the allegedly false statements or explain why they were false. The Court thus grants without prejudice Lenhard's motion to dismiss Count I of Plaintiffs' complaint.

## CONCLUSION

The Court denies Lenhard's motion to dismiss for lack of personal jurisdiction and grants without prejudice Lenhard's motion to dismiss Count I of Plaintiffs' complaint. The Court grants Plaintiffs leave to file an amended complaint within thirty (30) days of the date of this Order.

Signed April 9, 2018.

_____
David C. Godbey
United States District Judge