IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LIBERTY BANKERS LIFE INSURANCE COMPANY and CONTINENTAL LIFE INSURANCE COMPANY, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:16-CV-2417-N |
| WALTER H. LENHARD, III, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Walter H. Lenhard III's motion to dismiss [42]. For the reasons stated below, the Court denies and grants the motion in part.

### I. ORIGINS OF THE DISPUTE

The Court has already detailed the facts underlying this case. *See* April 9, 2018 Order 1-4 [35] ("Order"). In that Order, the Court gave Plaintiffs Liberty Bankers Life Insurance Company ("Liberty") and Continental Life Insurance Company ("Continental") thirty (30) days to file an amended complaint. They did so, making the following allegations: both Continental and Liberty raise tort claims of fraud, fraudulent inducement and negligent misrepresentation; Continental separately alleges breach of fiduciary duty and breach of the Consulting Agreement ("CA"); and Liberty separately alleges breach of the Stock Purchase Agreement ("SPA"). Now Lenhard moves to dismiss all the fraud, fraudulent inducement,

and negligent misrepresentation claims, as well as Continental's breach of fiduciary duty and breach of the CA claims, under Federal Rule of Civil Procedure 12(b)(6).[1]

## II. LEGAL STANDARD ON MOTION TO DISMISS

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

---

[1] As a preliminary matter, the Court rejects Plaintiffs' argument that Lenhard is precluded from moving under Rule 12(b)(6) per the consolidation requirement in Federal Rule of Civil Procedure 12(g)(2). The Fifth Circuit has held that Federal Rule of Civil Procedure 12(h)(2) explicitly excludes "motions based on the defense of failure to state a claim upon which relief can be granted" from the consolidation requirement. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007). Thus, Lenhard may move under Rule 12(b)(6).

ORDER – PAGE 2

Because some of Plaintiffs' claims here sound in fraud, Rule 9(b)'s heightened pleading requirements apply. Plaintiffs thus must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, the 'who, what, when, where, and how' of the fraud must be laid out." *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 470 (N.D. Tex. 2012) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).

### III. THE COURT DISMISSES LIBERTY'S EXTRA-CONTRACTUAL FRAUD CLAIMS, AND ITS NEGLIGENT MISREPRESENTATION CLAIM

#### *A. Choice of Law*

The first step to evaluating Liberty's tort claims is determining which state's substantive law applies. A federal court sitting in diversity jurisdiction applies the choice of law rules from the forum state. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (citing *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000)). So, Texas's choice of law rules apply. The SPA between Liberty and Lenhard contained a choice of law clause stating that "This Agreement shall be construed in accordance with, governed by, the internal laws of the Commonwealth of Pennsylvania." Def.'s Mot. to Dismiss Pls.' First Am. Compl. 5, [42] ("Mot."). "Texas law gives effect to choice of law clauses regarding construction of a contract." *Benchmark*, 343 F.3d at 726 (citing *In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546, 549 (Tex. 2002)). But that does not mean that the clause governs every interaction between Liberty and Lenhard. *Id.* The Fifth Circuit has held that an identical choice of law clause was "too narrow" to govern "claims of fraud and

negligent misrepresentation." *Id.* Accordingly, the Court follows the Circuit's instruction to use Texas's "most significant relationship" test to determine which state's substantive law applies. *Id.*

Texas Courts and the Restatement have laid out several factors for courts to consider when applying the most significant relationship test to these tort claims. These include: (1) the place where the plaintiff acted in reliance on the representation; (2) the place where the plaintiff received the representations; (3) the place the defendant made the representations; (4) the corporation's place of business; (5) the place where a tangible thing that was a subject of the agreement was situated; and (6) the place where the plaintiff is to render performance of the contract. *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349 (Tex. App. — Houston [14th Dist.] 2003, no pet.) (citing *Hughes Wood Prods. Inc., v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) & RESTATEMENT (SECOND) OF CONFLICT OF LAWS §148 (Am. Law Inst. 1975)).

Balancing these factors, Texas emerges as the clear winner. While Pennsylvania was once home to Continental and its documents, the bulk of the relevant misrepresentations were made in Texas. The first face-to-face meeting about the sale was in Dallas. Pls.' First Am. Compl. ¶¶ 21-23, [37] ("FAC"). At that meeting, Liberty alleges that Lenhard made several material misrepresentations. *Id.* Lenhard then sent boxes of due diligence containing alleged misrepresentations to Dallas. *Id.* at ¶ 24. The parties executed the SPA in Dallas, and, afterwards, Continental's moved much of its functions to Texas. *Id.* at ¶¶ 30, 33. Thus, the

Court holds Texas has the most significant relationship to the dispute, and that Texas law should therefore be used to evaluate Liberty's tort claims.

### B. The SPA's Integration Clause Bars Liberty's Tort Claims Based on Extra-Contractual Representations

Applying Texas law to Liberty's tort claims first requires the Court determine the validity of the SPA's integration clause. *Benchmark*, 343 F.3d at 728. The clause states that: "No representations are made by any party except as specifically set forth in this Agreement." Mot. at 5. If valid, this clause would bar all of Liberty's tort claims that relate to representations made outside the contract. In *Benchmark*, the Fifth Circuit held that integration clauses like this are controlled by the contract's choice of law clause. *Benchmark*, 343 F.3d at 729. Accordingly, the Court will apply Pennsylvania law to determine if the integration clause is valid.

Pennsylvania law is quite deferential to integration clauses. Faced with almost identical facts as those here, the Court in *Sunquest Information Systems v. Dean Witter Reynolds, Incorporated*, 40 F. Supp. 2d 644, 653 (W.D. Pa. 1999), held that the only exception to an integration clause's bar on parol evidence is when a plaintiff alleges that the parties agreed to representations that were omitted from the contract by fraud, accident, or mistake. Where, as here, a party claims that representations made prior to execution were fraudulently inducing, Pennsylvania law treats the integration clause as a complete bar. *Id.* Thus, the Court holds that Liberty's fraud and negligent misrepresentation claims, in so far

as they are based on representations made outside the contract, are barred by the integration clause.

### C. Liberty's Remaining Fraud Claims May Proceed, but Its Negligent Misrepresentation Claim is Dismissed

Liberty's tort claims are also based on several misrepresentations made within the SPA. *See, e.g.*, FAC at ¶58. These are not blocked by the integration clause, and, given the choice of law analysis above, must be analyzed under Texas law. *Benchmark*, 343 F.3d at 729.

Under Texas law, "it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Formosa Plastics Corp. USA v. Presidio Eng'rs. & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). Thus, so long as Liberty's fraud claims are plausible, they may proceed alongside its breach of contract claims.[2]

Liberty has clearly met the heightened Rule 9(b) standard in the FAC. It spends over twenty pages documenting the factual basis for its fraud claims, even labeling the relevant sections: who, what, when, where, and how. FAC at ¶¶ 49-66. It provides specific data, dates, and identifies the exact representations it believes were fraudulent, some of which were placed into the language of the SPA. *See, e.g.*, *Id.* at ¶58. Accordingly, the Court

---

[2] Lenhard appears to concede this point by arguing that only Liberty's claim for negligent misrepresentation is unallowable under Texas law. Reply of Def. in Supp. of Def.'s Mot. to Dismiss Pls.' Am. Compl. 3, [48] ("Reply").

allows Liberty's claims for fraud and fraudulent inducement, in so far as they relate to representations contained within the SPA, to proceed alongside its breach of contract claims.

The same is not true for Liberty's negligent misrepresentation claim. To bring a claim of negligent misrepresentation, Texas law requires the plaintiff show it "suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797 (Tex. App. — Houston [1st Dist.] 2007, pet. denied). Liberty gives no evidence of an independent injury. In fact, it makes clear that the damages it seeks to recover under this claim are the same "actual damages" it seeks under its breach of contract theory. FAC at ¶¶ 77, 86. Thus, because Liberty has not met its burden of proving independent injury, the Court dismisses its negligent misrepresentation claim.

In sum, the Court allows only Liberty's claims for fraud and fraudulent inducement that are based on representations within the SPA. The Court dismisses the rest of Liberty's tort claims.

### IV. THE COURT ALLOWS CONTINENTAL'S FRAUD CLAIMS, BUT DISMISSES ITS NEGLIGENT MISREPRESENTATION CLAIM

The analysis of Continental's tort claims is quite similar to that of Liberty's, with two exceptions. First, because Continental was not a party to the SPA, its claims are not subject to the same integration or choice of law clauses. It is, however, subject to the Florida choice of law clause in the CA. *See* Resp. at 20 n.7. Yet, because this clause has the same language as the one used in the SPA and in *Benchmark*, the same conclusion from the analysis above

applies: the clause is too narrow to govern Continental's tort claims, so the Court must use Texas's most significant relationship test to determine which law to apply. Though the parties have not briefed this issue, Florida clearly does not have the most significant relationship to this dispute. The only connection to Florida is that it is where Lenhard resides. FAC at ¶8. As noted above, the bulk of the misrepresentations that form the basis of this case happened in Texas. Thus, Texas law controls.

Second, because the CA lacks an integration clause, there is no need to draw a distinction between the fraud claims based on representations in the contract and those outside of it. Under Texas law in *Formosa*, all of Continental's fraud claims may proceed alongside its breach of contract claims, so long as they are plausible. *Formosa*, 960 S.W.2d 41, 46 (Tex. 1998).

The rest of the analysis is the same as that above. Continental's claims are based on the same set of facts and allegations that the Court already determined meet Rule 9(b)'s heightened pleading standard. Furthermore, Continental's negligent misrepresentation claim fails because Continental makes no showing of independent injury and alleges the same damages for its negligent misrepresentation claim and its breach of contract claim. *See* FAC at ¶¶ 77, 86. Thus, the Court allows all of Continental's tort claims, except its negligent misrepresentation claim.

### V. THE COURT DISMISSES CONTINENTAL'S BREACH OF FIDUCIARY DUTY CLAIM

Texas law applies to Continental's claim for breach of fiduciary duty for the same reason it applies to Continental's tort claims: the CA's choice of law clause is narrow and doesn't control extra-contractual claims, and Texas has the most significant relationship to the dispute. To establish a breach of fiduciary duty claim under Texas law, Continental must first show Lenhard owed a fiduciary duty. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005).

Continental has not established a fiduciary duty existed at the time of sale. While it claims Lenhard owed a formal fiduciary duty because he was owner and CEO of Continental, he was not acting as CEO when he decided to sell the company. Rather, he was acting as a shareholder, and shareholders do not have the same special automatic fiduciary status corporate officers hold under Texas law. *In re Harwood*, 637 F.3d 615, 620 (5th Cir. 2011). In addition, there is no evidence that Continental relied on Lenhard for the sort of moral, financial, or personal support that is required to establish an informal fiduciary duty under Texas law. *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998). Indeed, this was purely an arms-length transaction between Lenhard and Liberty for Lenhard's shares in the company. That Continental representatives may have particularly trusted Lenhard's representations because of their previous relationship does not in itself mean he owed a fiduciary duty upon the sale. *See Meyer*, 167 S.W.3d. at 331. Accordingly, the Court dismisses Continental's breach of fiduciary duty claim.

## VI. THE COURT ALLOWS CONTINENTAL'S BREACH OF CONTRACT CLAIM

Continental's breach of contract claims are based on the terms within the CA. Thus, the CA's Florida choice of law provision controls. Under Florida law, there are three elements of a breach of contract claim: (1) a valid contract, (2) material breach, and (3) damages. *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362 (S.D. Fla. 2017). Lenhard argues that because the CA contractually bound him to take on only projects that he and Continental mutually agreed on, he cannot be held liable for breach for refusing to work. Reply at 9. While the Court agrees with Lenhard's analysis of the CA's construction, Continental's allegations do include several instances in which Lenhard plausibly failed to execute projects he agreed to do. For example, it alleges that despite agreeing to provide data so that a representative could do an accurate financial evaluation, Lenhard provided false data that made the evaluation impossible. FAC at ¶¶ 83-86. It also alleges that despite agreeing to help reconcile discrepancies in the data by providing a seriatim listing of Continental's policies, Lenhard later changed his mind and refused to do so. *Id.* Each of these allegations plausibly constitute breach under Florida law. Accordingly, the Court allows the claim to proceed.

## CONCLUSION

The Court grants Lenhard's motion to dismiss with respect to the following claims: (1) Liberty's claims for fraud and fraudulent inducement that are based on representations made outside the SPA; (2) Liberty's negligent misrepresentation claim; (3) Continental's negligent misrepresentation claim; and (4) Continental's breach of fiduciary duty claim. The

Court dismisses these claims with prejudice. The Court allows the following claims to proceed: (1) Liberty's fraud and fraudulent inducement claims based on representations within the SPA; (2) Continental's fraud and fraudulent inducement claims; and (3) Continental's breach of contract claim.

Signed February 6, 2019.

                                              David C. Godbey
                                          United States District Judge